THE UNIVERSITY OF TEXAS MEDICAL BRANCH HOSPITAL AT GALVESTON, Appellant,

v.

Darcy HARDY, Individually and as Representative of the Estate of Dorothy Walsh, Appellee.

No. 14–98–00971–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 1999.

Rehearing Overruled Oct. 28, 1999.

Joseph M. Dunn, Austin, for appellant.

William Schmidt, Austin, for appellee.

Panel consists of Justices YATES, FOWLER and DRAUGHN.[1]

## OPINION

JOE L. DRAUGHN, Senior Justice.

Darcy Hardy, individually and as representative of the estate of Dorothy Walsh, appellee, brought a wrongful death and survival suit against The University of Texas Medical Branch Hospital at Galveston ("the hospital"), appellant, for the death of Dorothy Walsh ("decedent"). Appellant filed a plea to the jurisdiction based upon sovereign immunity. The trial court denied the plea to the jurisdiction and the hospital brought this appeal.

### Background

On May 17, 1995, the decedent was admitted into the hospital for elective surgery. The surgery consisted of a coronary angioplasty which was intended to correct a 90% left anterior descending occlusion. During the procedure, the physician was unable to open one of the decedent's coronary arteries for placement of a stent, and the decedent was taken immediately to another operating room where she underwent coronary artery bypass surgery. A few days after the bypass surgery, the decedent was transferred to the hospital's cardiothoracic care unit. While in the cardiothoracic care unit, the decedent was connected to a cardiac monitor which was intended to monitor her heart's activity and signal an alarm if any problems occurred. Just after midnight on May 22, 1995, the decedent's cardiac monitor sounded an alarm due to a complete heart block and heart stoppage. Resuscitation efforts, however, were not commenced for

---

1. Senior Justice Joe L. Draughn sitting by assignment.

at least five minutes following the first alarm from the cardiac monitor. Although the resuscitation efforts were successful in reviving the decedent's heart, the lack of oxygen caused severe damage to her brain. The decedent never regained consciousness and was taken off life support and died on June 5, 1995.

Appellee brought a wrongful death and survival action against the hospital, asserting that the negligent use of the cardiac monitor resulted in the death of the decedent. According to the appellee, the hospital employees did not properly oversee the cardiac monitor, resulting in an unreasonable amount of time passing between the cardiac monitor's initial alarm indicating decedent's heart had stopped and the beginning of resuscitation efforts. In response to appellee's suit, the hospital filed a plea to the jurisdiction based on sovereign immunity claiming the appellee failed to raise a fact issue as to whether decedent's death was caused by a condition or use of tangible personal property. The trial court denied the plea to the jurisdiction and appellant brought this interlocutory appeal pursuant to § 51.014(8) of the Texas Civil Practice and Remedies Code.

**Sovereign Immunity**

Generally, the state is immune from suit for the negligent or intentional acts of its employees, unless a specific statutory exception exists. Appellee asserts such a specific waiver of immunity exists under section 101.021(2) of the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). This section provides that "[a] governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* The appellee contends that the hospital's employee was negligent in monitoring the decedent's cardiac monitor. However, such negligence alone does not automatically trigger a waiver of governmental immunity. To properly determine whether a waiver of immunity under § 101.021(2) is proper in this case, we must address two questions. First, did the alleged negligence of appellant in failing to monitor the cardiac monitor constitute a use of tangible personal property so as to implicate a waiver under the above exception to sovereign immunity? *See Texas Youth Com'n v. Ryan,* 889 S.W.2d 340, 342–343 (Tex.App.—Houston [14th Dist.] 1994, no writ.). For "use" of tangible personal property to occur, the actor must " 'put or bring [the property] into action or service; to employ for or apply to a given purpose.' " *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 584 (Tex.1996) (citations omitted). Second, did the hospital employee's negligent use of the cardiac monitor proximately cause the decedent's death? *See Ryan,* 889 S.W.2d at 342–43. In evaluating the existence of proximate cause, the involvement of the property alone is not sufficient to waive immunity. *See Dallas County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 342 (Tex.1998). Instead, there must be a direct and immediate relationship between the injury and the use of the property. *See id.* Although we have been given varied and limited guidance by the courts and the legislature as to when the relationship between the injury and the property becomes too attenuated to impose liability, factors that we may consider include the geographic, temporal, and causal distance between the property and the injury. *See id.*

The Texas Supreme Court considered the applicability of the TTCA under a similar fact situation in *Salcedo v. El Paso Hospital District.,* 659 S.W.2d 30 (Tex. 1983). In *Salcedo,* the plaintiff's husband went to the emergency room of the hospital with chest pains, and was given an examination which included an electrocardiogram. *Id.* at 31. The electrocardiogram charts showed a classic pattern for a heart attack. The doctor who read the chart, however, failed to recognize the pat-

tern and sent the patient home. *See id.* Shortly after returning home, the patient suffered a heart attack and died. *See id.* The Supreme Court held that the improper reading and interpreting of electrocardiogram charts constituted a use of tangible personal property so as to allow a cause of action for wrongful death recovery under the TTCA. *See id.* at 33.

The reasoning expressed by the Supreme Court in *Salcedo* is applicable to the present case. In *Salcedo,* the use of the electrocardiogram machine directly affected and impacted the person whose heart condition was being traced. The primary purpose of using and interpreting the electrocardiogram graph was to properly diagnose Mr. Salcedo, to treat him, and prevent him from having a heart attack. By improperly using the graphs, Mr. Salcedo was incorrectly treated, and he subsequently died of a heart attack, the very result the proper use of the electrocardiogram was specifically intended to avoid.

■ In the present case, the use of the cardiac monitor directly affected the decedent by monitoring her heart's activity, and served as an early warning device in case of a problem. The cardiac monitor could only be effective, however, if it was properly monitored at all times. Unfortunately, the person responsible for monitoring the cardiac monitor failed to do so, resulting in the death of the decedent from the very condition that the proper use of the cardiac monitor was intended to avoid.

■ We find no significant distinctions between the facts before us and the facts of *Salcedo* insofar as the tangible personal property at issue is concerned. The electrocardiogram in *Salcedo* and the cardiac monitor here were "put into action or service" and "employed for a given purpose." There is little doubt that the hospital's decision to put the cardiac monitor into service for the purpose of monitoring the decedent's heart, and the hospital employee's subsequent failure to pay proper attention to the monitor, constitute a use or misuse, of tangible personal property. Furthermore, the relationship between the alleged negligence of the employee and the death of the decedent is in no way attenuated, or weak but rather, is contemporaneous and directly connected.

The failure of the hospital personnel to respond timely to the cardiac monitor caused a delay in the resuscitation of the decedent. Appellee presents expert evidence that this delay was the proximate cause of the decedent's death, due to injury to the brain from the lack of oxygen. There was some evidence of a delay from five to eleven minutes before the decedent's heart was resuscitated after it stopped. It was this deprivation of oxygen to the brain that caused her subsequent death.

We make no judgment as to the weight of the evidence; that task remains for the factfinder. However, we do find that appellee's allegations that (1) the hospital employee was negligent in failing to properly monitor the cardiac monitor, and (2) that such failure constituted a use of tangible personal property which was the proximate cause of the decedent's death, are sufficient to bring the case within the waiver of governmental immunity under section 101.021(2) of the TTCA. Thus, we hold that the trial court has jurisdiction over this cause of action.

The judgment of the trial court denying the plea to the jurisdiction is affirmed.