Opinion issued October 21, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00163-CV

———————————

Safwat Kamel, Appellant

V.

University
of Texas Health Science Center at Houston, Appellee



 



 

On Appeal from the 152nd District Court

Harris County, Texas



Trial Court Case No. 0635924

 



 

O P I N I O N

          In
this medical malpractice case, appellant, Safwat Kamel, appeals from the trial
court’s grant of appellee University of Texas Health Science Center at
Houston’s (“UTHSCH’s”) plea to the jurisdiction.  In four issues, Kamel argues that (1) the
trial court abused its discretion in granting UTHSCH’s plea to the jurisdiction
because no fact issue remained regarding whether Kamel’s claim was based upon
an employee of UTHSCH’s use or misuse of tangible personal property, as
required by the Texas Tort Claims Act (TTCA)[1] for waiver of a
governmental entity’s immunity; (2) he properly pleaded that UTHSCH waived its
immunity under the TTCA and no fact issue exists regarding the trial court’s
jurisdiction over UTHSCH; (3) the trial court was bound by its previous ruling
dismissing with prejudice Kamel’s claims against UTHSCH’s employee; and
(4) the trial court’s rulings violated “the Open Courts Provisions” of the
Texas Constitution.

          We
affirm.

Background

On June 26, 2005, Kamel visited
Lyndon B. Johnson General Hospital complaining of an enlarged testicle.  Dr. Run Wang and Dr. Tiffany Sotelo diagnosed
him with a hydrocele, or accumulation of fluid around the testicle, and
epididymitis, or inflammation of the epididymis, of the right testicle and
recommended surgery.  On July 8, 2005,
Dr. Wang and Dr. Tiffany performed the hydrocelectomy, or removal of the
hydrocele, with Kamel’s consent.  During
the surgery, Dr. Wang determined that the testicle “looked very abnormal” and
he became concerned that, given Kamel’s previous history of colon cancer, the
cancer had metastasized to the testicle.  Dr. Wang removed the testicle.  He used various surgical instruments to
remove Kamel’s testicle, including scissors, hemostats, and sutures.  Subsequent testing revealed that Kamel did
not have cancer in his testicle.

          On
June 9, 2006, Kamel sued Dr. Sotelo, Dr. Wang, and Lyndon B. Johnson General
Hospital for medical malpractice.  Dr.
Wang moved for dismissal from the suit pursuant to section 101.106(f) of the
TTCA.  Dr. Wang argued that Kamel’s
claims against him should be dismissed because Kamel “has filed this cause of
action against [Dr. Wang] alleging conduct that is within the general scope of his
employment with [UTHSCH]” and that “this case could have been brought against
[UTHSCH].”

          Kamel
responded to Dr. Wang’s motion to dismiss, arguing that Dr. Wang did not
adequately establish that he was an employee of a governmental entity as
defined by the TTCA and that Dr. Wang did not meet “the second prong of his
burden for dismissal in that he has not shown how this Cause could have been
brought against his alleged government employer as required for a Motion to
Dismiss pursuant to [TTCA, section] 101.106(f).”  Kamel’s response also included a request for
leave to file an amended petition “[i]n the event that the Court will Grant
[Dr. Wang’s] Amended Motion to Dismiss.”

          Dr. Wang
replied, arguing, “Of note, Plaintiff’s Original Petition alleges sufficient
facts to find a waiver of immunity based on the use and misuse of tangible
personal property.  The underlying basis
of Plaintiff’s claims against Dr. Wang relate to the use or misuse of tangible
real property, namely surgical instruments that were used to remove his right
testicle.”  Dr. Wang argued that Kamel’s
claims all related to the removal of his testicle, that the “testicle was
removed by using a scalpel and other surgical instruments,” that “Dr. Wang’s
direct use of these surgical instruments . . . caused the
removal” of Kamel’s testicle, and that Kamel’s injury “was immediate[ly] and
directly caused by the use (or misuse) of the surgical instruments,” and, thus,
UTHSCH’s sovereign immunity was waived under section 101.021(2).

Kamel moved to dismiss Dr. Wang and
to amend his pleadings to replace Dr. Wang with UTHSCH “pursuant to [TTCA section]
101.106(f).”  The trial court granted
Kamel’s motion to dismiss and Kamel subsequently filed his second amended petition
dismissing Dr. Wang from the suit and adding UTHSCH as a defendant.  Accordingly, no hearing was held on Dr.
Wang’s motion to dismiss and the trial court did not sign an order addressing
that motion.  Kamel also dismissed Lyndon
B. Johnson General Hospital from the suit.

On January 31, 2007, Dr. Sotelo
filed a motion to dismiss pursuant to sections 101.106(a) and (f) of the TTCA.[2]  The trial court granted her motion to dismiss
without stating which ground it relied upon. 
The trial court severed the claims against Dr. Wang and Dr. Sotelo and
issued final judgments.  Kamel appealed
the dismissal of Dr. Sotelo to this Court, arguing that dismissal of Dr. Sotelo
was inappropriate because Dr. Sotelo was not an employee of a governmental
entity for purposes of section 101.106.  Kamel v. Sotelo, No. 01-07-00366-CV,
2009 WL 793742, at *1 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, no pet.)
(mem. op.).  We affirmed the dismissal of Dr. Sotelo,
holding that she was an employee of a governmental entity for purposes of the
TTCA.[3]  Id. at
*5.

          UTHSCH
filed its second amended plea to the jurisdiction, arguing that it was a state
entity that is immune from suit and that Kamel’s claims did not fall within the
waiver of immunity under the TTCA.

Kamel’s third amended petition, the
live pleading, alleged that UTHSCH was liable because Dr. Wang and Dr. Sotelo
“negligently used tangible personal property, namely a scalpel, scissors,
and/or other surgical instruments to negligently injure plaintiff by injuring
and removing plaintiff’s right testicle.  Such removal was negligent in that the removal
was a breach of the standard of care owed to plaintiff.”  It also alleged that “Wang failed to obtain
the appropriate consent”; that Dr. Wang failed to disclose “that [Kamel] may
[lose] his testicle as a risk of the procedure”; and that “a reasonable and
prudent physician would not have removed Mr. Kamel’s testicle unless there was
a medical necessity and/or would not have removed Mr. Kamel’s testicle without
obtaining the proper informed consents and/or would not have further injured
Mr. Kamel’s testicle as a result of the intended hydrocele procedure.”

          On
December 3, 2008, the trial court granted UTHSCH’s plea and dismissed Kamel’s
claims for lack of jurisdiction.  This
appeal followed.[4]

Analysis

In his first issue, Kamel argues
that the trial court erred in granting UTHSCH’s plea to the jurisdiction.

A.      Standard of Review

A plea to the jurisdiction
challenges the trial court’s subject-matter jurisdiction to hear the case.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  Subject-matter
jurisdiction is essential to the authority of a court to decide a case and is
never presumed.  Tex. Ass’n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 443–44 (Tex. 1993).  The existence of subject-matter jurisdiction
is a question of law that we review de novo. 
State Dep’t of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d
322, 327 (Tex. 2002).

The plaintiff has the burden to
allege facts affirmatively demonstrating that the trial court has subject-matter
jurisdiction.  Tex. Ass’n of Bus., 852 S.W.2d at 446.  We must construe pleadings in favor of the
plaintiff and look to their intent, and we are required to construe the
allegations in favor of jurisdiction unless, on its face, the petition affirmatively
demonstrates a lack of jurisdiction.  Arnold v. Univ. of Tex. Sw. Med. Ctr. at
Dallas, 279 S.W.3d 464, 467 (Tex. App.—Dallas 2009, no pet.).  When
a plea to the jurisdiction challenges the existence of jurisdictional facts,
the trial court must consider relevant evidence submitted by the parties.  Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 227 (Tex. 2004). 
If the evidence creates a fact question regarding jurisdiction, the
trial court cannot grant the plea to the jurisdiction, and the fact issue will
be resolved by the fact finder; however, if the relevant evidence is undisputed
or fails to raise a fact question on the jurisdictional issue, the trial court
rules on the plea as a matter of law.  Id.
at 227–28.  In deciding a plea to the
jurisdiction, a court may not consider the merits of the case, but only the
plaintiff’s pleadings and the evidence pertinent to the jurisdictional inquiry.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).  In conducting our review, we take as
true all evidence favorable to the nonmovant and indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.  Miranda, 133 S.W.3d at 228.

B.      Waiver of UTHSCH’s Immunity Under Texas
Tort Claims Act

          Sovereign
immunity deprives a trial court of subject-matter jurisdiction in lawsuits
against the state or certain governmental units unless the state consents to
suit.[5]  Id.
at 224.  It is undisputed that UTHSCH is
a governmental entity.  The TTCA provides
a limited waiver of governmental liability from suit.  Tex.
Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005).

          1.       Waiver
provision of Section 101.021

 

          Section
101.021 provides:

A governmental unit in the state
is liable for:

 

(1)     property damage, personal injury, and death proximately caused
by the wrongful act or omission or the negligence of an employee acting within
his scope of employment if:

          

          (A)    the
property damage, personal injury, or death arises from the operation or use of
a motor-driven vehicle or motor-driven equipment; and

 

          (B)     the
employee would be personally liable to the claimant according to Texas law; and

 

(2)     personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law.

 

Tex. Civ.
Prac. & Rem. Code Ann. §
101.021.  Thus, to come within this limited
exception, Kamel must allege that his personal injury was proximately caused by
the use of tangible personal property.  See Dallas
County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339,
342–43 (Tex. 1998); see also Dallas Area
Rapid Transit v. Whitley, 104 S.W.3d 540, 542–43 (Tex. 2003) (requiring
nexus between use of tangible property and plaintiff’s injuries).

          Kamel
relies on Salcedo v. El Paso Hospital
District, 659 S.W.2d 30 (Tex. 1983) and its progeny.  In Salcedo,
the patient was examined for severe chest pains.  Id.
at 31.  An electrocardiogram test
conducted in the emergency room showed a classic pattern of heart attack, but
the patient was released and later died of a heart attack.  Id.  His widow sued and alleged that the hospital
misused the electrocardiograph by improperly reading and interpreting the
results it produced.  Id.  The
Texas Supreme Court held that “an allegation of defective or inadequate
tangible property” was not necessary to state a cause of action under the TTCA
as it existed at that time “if ‘some use’ of the property, rather than ‘some
condition’ of the property, is alleged to be a contributing factor of the
injury.”  Id. at 32 (noting that statute required that provisions of act be
liberally construed to achieve its purpose and stating, “To hold that the Act
requires an allegation of defective or inadequate property when such an
allegation is neither expressly nor impliedly required by section 3 would place
a restrictive interpretation on the ‘condition or use’ language” which would
violate legislative mandate to liberally construe act’s provisions).  The supreme court concluded that Salcedo had
alleged that her loss was proximately caused by the negligence of the emergency
room employees in using tangible personal property and thus the hospital had
waived sovereign immunity.  Id. at 32–33.

          Other
courts have used the reasoning in Salcedo
to find waiver of immunity under section 101.021(2).  See
Robinson v. Cent. Tex. MHMR Ctr., 780 S.W.2d 169, 170–71 (Tex. 1989)
(applying Salcedo in determining that
plaintiff stated cause of action waiving immunity by alleging that MHMR’s
failure to provide life preserver to patient known to suffer epileptic seizures
that caused him to lose consciousness led to patient drowning at lake while
under MHMR’s care); Univ. of Tex. Med.
Branch Hosp. at Galveston v. Hardy, 2 S.W.3d 607, 609–10 (Tex. App.—Houston
[14th Dist.] 1999, pet. denied) (holding that hospital had waived immunity
where wrongful death plaintiff asserted that hospital staff failed to properly
oversee cardiac monitor and concluding that use of cardiac monitor, like EKG in
Salcedo, directly affected and
impacted person whose heart condition was being monitored); Tejada v. Rowe, 207 S.W.3d 920, 925 (Tex. App.—Beaumont 2006, pet.
filed) (holding that use of drug and forceps in delivery of baby who ended up
suffering from cerebral palsy was use of tangible property establishing that
claim could have been brought against hospital as governmental entity under
TTCA).

          However,
the supreme court later specifically limited its holding in Salcedo to the particular facts of that
case.  Bossley, 968 S.W.2d at 342 (noting that waiver of immunity in Salcedo arose from entity’s misuse of
electrocardiograph).  Furthermore, 

When Salcedo was decided [in] 1983, the [TTCA] provided for waiver of
sovereign immunity for “death of personal injuries so caused from some condition or some use of tangible property. . . . (Emphasis
added).  At the time, the [TTCA] also
provided, “[t]he provisions of this Act shall be liberally construed to achieve
the purposes thereof.”  However, when the
Legislature codified the [TTCA] and adopted the Texas Civil Practice and
Remedies Code in 1985, two years after Salcedo,
the word “some” was deleted preceding “condition” and “use.”  Additionally, the mandate for liberal
construction of provisions of the [TTCA] was repealed and not carried forward
in the codification.

 

Texas Tech Univ. Health Sci. Ctr. v. Ward, 280 S.W.3d 345, 349–50 (Tex. App.—Amarillo 2008, pet.
denied) (citing Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex.
Gen. Laws 3084, 3085, Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969
Tex. Gen. Laws 874, 877, and Act of May 17, 1985, 69th Leg., R.S., ch. 959, §
1, 1985 Tex. Gen. Laws 3242, 3303).

          More
recent opinions of the supreme court have limited the waiver of immunity under
101.021(2).  In University of Texas Medical Branch at Galveston v. York, 871 S.W.2d
175 (Tex. 1994), the plaintiff alleged that UTMB misused tangible personal
property by failing to note the patient’s fall and other observations regarding
his care in his medical records.  Id. at 176.  The supreme court noted that the codified
version of the TTCA eliminated the provision requiring liberal construction and
instead called for construction under the general rules of statutory
construction.  Id. at 177 & n.3.  The
court held that information recorded in a patient’s medical records was not
tangible personal property, and, thus, York failed to allege a claim that
waived immunity because he did not allege misuse of any hospital device or
equipment.  Id. at 178–79 (“[I]nformation, which may or may not be recorded in
a patient’s medical records, does not constitute tangible personal property
under section 101.021(2) of the [TTCA] and [thus] the State has not waived
governmental immunity for negligence involving the use, misuse, or nonuse of
information in a patient’s medical records.”).

          In Dallas
County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339
(Tex. 1998), a mental patient escaped through unlocked doors from a mental
hospital and committed suicide by throwing himself in front of a truck, and his
parents sued, claiming that the patient’s death was caused by the unlocked doors,
and thus Dallas County MHMR waived its liability under section 101.021(2).  Id. at
340–41.  The supreme court held that:

Section 101.021(2) states that for
immunity to be waived, personal injury or death must be proximately caused by a
condition or use of tangible personal or real property.  The requirement of causation is more than
mere involvement, although exactly how much more has been difficult for courts to
define.  If only involvement were required,
the waiver of immunity would be virtually unlimited, since few injuries do not
somehow involve tangible personal or real property.  Requiring only that a condition or use of the
property be involved would conflict with the [TTCA’s] basic purpose of waiving
immunity only to a limited degree.

Id. at 342–43.  The court also held that “[p]roperty does not
cause injury if it does no more than furnish the condition that makes the
injury possible.”  Id. at 343.  The court
concluded that while the unlocked doors permitted the patient’s escape, they
did not cause his death, and thus the nexus between the use or condition of the
doors and the patient’s death was too attenuated to constitute a waiver of
immunity.  Id. 

          In Texas
Department of Criminal Justice v. Miller, 51 S.W.3d 583 (Tex. 2001), an inmate
was treated for nausea and severe headaches by the administration of various
medications and other treatments before he was diagnosed with meningitis and
died of that illness.  Id. at 585.  His widow claimed that his death was caused
by the misuse of tangible property because the staff improperly administered
medication and misused certain medical equipment.  Id.  The supreme court noted:

There cannot be waiver of
sovereign immunity in every case in which medical treatment is provided by a
public facility.  Doctors in state
medical facilities use some form of tangible personal property nearly every
time they treat a patient.  If there is
waiver in all of those cases, the waiver of immunity is virtually unrestricted,
which is not what the Legislature intended.

 

Id. at 588 (internal quotations and
citations omitted).  The court stated
that while TDCJ did “use” various drugs and medical equipment in treating the
inmate, it is not sufficient for waiver purposes “that some property is merely
involved. . . . Using that property must have actually
caused the injury.”  Id.  The court concluded that
the property used on the inmate here might have furnished the condition that
made his injury possible, but they did not hurt the inmate or make him worse in
and of themselves.  Id.

          Several
intermediate courts of appeals have followed these more recent cases in
limiting Salcedo and its
progeny.  See Anderson v. City of San Antonio, 120 S.W.3d 5, 6–9 (Tex.
App.—San Antonio 2003, pet. denied) (holding there was no waiver when EMTs
performed two electrocardiogram tests, determined patient did not need further
care, and patient later died of heart attack, because patient’s death was
caused by cardiac condition and EMT’s negligence, not by use of
electrocardiogram machine); Kelso v.
Gonzales Healthcare Sys., 136 S.W.3d 377, 380–82 (Tex. App.—Corpus Christi
2004, no pet.) (holding that allegations that injuries were caused by misuse of
EKG machine did not fall within waiver provisions of TTCA because plaintiff had
not made affirmative allegation that EKG machine was incorrectly used or that
its results were erroneous and reasoning that misuse of information produced by
EKG machine caused injuries rather than device itself); Ward, 280 S.W.3d at 356 (holding that alleged misuse of fetal heart
monitor was not sufficient to waive immunity because plaintiffs “did not allege
that the monitor was incorrectly used or that its results were erroneous” but
rather alleged that hospital employees failed to recognize and respond to
results of heart monitoring, “which are allegations of misuse of information
and negligence by medical staff”; court held that plaintiffs “failed to
establish a nexus between use of the monitor and the stillborn birth of their
child” because evidence indicated that cause of death was a knot in umbilical
cord).

          Specifically,
the Dallas Court of Appeals has recently addressed waiver of immunity under
section 101.021(2) in the context of a breast implant replacement surgery.  Arnold,
279 S.W.3d at 467.  The appellants in Arnold alleged that the doctor who
performed the allegedly negligent surgery “failed to make the proper
pre-surgery investigation and arrangements,” that the doctor failed to receive
informed consent, and that the negligent use of breast implants resulted in and
proximately caused damages and injuries, including deforming the patient’s
breasts and requiring additional surgery. 
Id. at 468–70.  The Dallas court concluded that the
plaintiff’s claims that the doctor failed to properly investigate or respond to
post-surgery concerns were “alleged errors in medical judgment” and held that
“[e]rrors in medical judgment do not waive immunity under the TTCA.”  Id.
at 469 (citing Miller, 51 S.W.3d at
589).  It also concluded that “[f]ailure
to receive informed consent [does] not waive immunity under the TTCA.”  Id. (citing
Mitcham v. Univ. of Tex. Med. Branch of
Galveston, 818 S.W.2d 523, 525 (Tex. App.—Houston [14th Dist.] 1991, writ
denied) (holding there was no waiver when plaintiff alleged that doctor
inserted arteriogram needle into her femoral artery without receiving informed
consent because plaintiff did not argue that any condition of needle was
defective or that needle was actually used in negligent manner, but allegations
instead focused on physician’s negligence in informing plaintiff of risks).

          Finally,
the court in Arnold examined the
plaintiff’s specific allegations that the breast implants themselves caused her
injuries.  Id. at 470.  The court
recognized that we must focus “on the true nature of disputes rather than
allowing artful pleading to gain favorable redress under the law.”  Id. (citing
Baylor Univ. v. Sonnichsen, 221
S.W.3d 632, 636 (Tex. 2007) and Ambulatory
Infusion Therapy Specialists, Inc. v. N. Am. Adm’rs, Inc., 262 S.W.3d 107,
112 (Tex. App.—Houston [1st Dist.] 2008, no pet.)).  The court thus focused “on the true nature of
the dispute between the Arnolds and appellee to determine whether their claims
are a disguised attempt to plead around the TTCA.”  Id.  The court noted that the Arnolds made “no
allegation that the implants themselves were defective in any way or used in a
negligent manner.  Rather, any alleged
negligence and resulting damages, despite their attempts to bring their cause
of action under the waiver statute, was the result of medical decisions by [the
doctor].”  Id.  It concluded that
because the true nature of the Arnolds’ complaint was that the doctor made an
error in medical judgment, “the fact that the pleadings also identify a piece
of tangible personal property used during the procedure” does not make their
claim one that falls within the waiver provision of 101.021(2).  Id.

          2.       Application
of Section 101.021(2) to Kamel’s Claims

          In
his third amended petition, Kamel alleged that, through Dr. Wang and Dr.
Sotelo, UTHSCH was negligent as follows:

·       
Doctors “negligently used tangible
personal property, namely a scalpel, scissors, and/or other surgical
instruments” to injure and remove his testicle, and a “reasonable and prudent
physician would not have removed [Kamel’s] testicle unless there was a medical
necessity,” would have obtained consent, and would not have “further injured
[Kamel’s] testicle as a result of the intended hydrocele procedure”;

 

·       
Dr. Wang failed to obtain the
appropriate consent before removing the testicle and failed to inform Kamel of
his “true physical state before and after treatment”;

 

·       
Dr. Wang and Dr. Sotelo
negligently failed to completely disclose the risks and hazards posed by the
hydrocelectomy;

 

·       
Dr. Wang negligently supervised
and advised Dr. Sotelo as she performed the hydrocelectomy;

 

·       
Dr. Sotelo failed to perform the
medical treatment necessary;

 

·       
Dr. Sotelo failed to “recognize
and/or acknowledge her recognition of [Kamel’s] symptoms that resulted from her
negligent use of personal tangible property during treatment; and 

 

·       
Dr. Sotelo failed to use
acceptable practices to limit the likelihood and probability of infection
following treatment.

          As
in Arnold, Kamel’s claims regarding
failure to disclose risks and to receive informed consent do not fall within
the waiver provision of the TTCA.  See id.
at 469 (“Failure to receive informed consent [does] not waive immunity under
the TTCA.” (citing Miller, 51 S.W.3d
at 589)).  Likewise, Kamel’s claims of
negligent supervision, failure to perform the necessary medical treatment, and
failure to use acceptable practices to limit infection are claims for errors in
medical judgment or general medical negligence and do not involve the use of
tangible property.  Therefore, those
claims do not fall within the waiver in section 101.021(2).  See id.;
see also Hall v. Provost, 232 S.W.3d
926, 928 (Tex. App.—Dallas 2007, no pet.)
(holding that general medical malpractice claims do fall with waiver
provision of TTCA).

          Finally,
Kamel contends that the doctors’ use of surgical instruments was the actual
cause of his injury.  Like the court in Arnold, we must focus on the true nature
of the dispute between Kamel and UTHSCH to determine whether his claims are an
attempt to artfully plead around the requirements of the TTCA.  See Arnold,
279 S.W.3d at 470.  Just as in Arnold, Kamel has made no claim that the
surgical instruments themselves were defective in any way or that they were
used in a negligent manner.  Rather, the
crux of Kamel’s argument is that Dr. Wang made an erroneous medical judgment in
determining that Kamel’s testicle needed to be removed.  The fact that tangible personal property was
used during the procedure conducted as a result of the allegedly erroneous
judgment does not establish that the use of the surgical instruments itself was
the proximate cause of Kamel’s injury, and, thus, these allegations do not fall
within the limited waiver in section 101.021(2).  See id.
(holding that errors in medical judgment do not provide waiver of immunity
under TTCA); see also Miller, 51
S.W.3d at 588 (recognizing that every use of medical equipment cannot
constitute waiver because doctors almost always use medical equipment in
treating patients); Bossley, 968
S.W.2d at 342–43 (holding that use of tangible property must be proximate cause
of injury and that “[p]roperty does not cause injury if it does no more than
furnish the condition that makes the injury possible”).

          We
overrule Kamel’s first issue.

C.      Trial Court’s Previous Ruling on Dr. Sotelo’s
Motion to Dismiss under Section 101.106

 

          In his second issue, Kamel argues that he properly
pleaded that UTHSCH waived its immunity under the Texas Tort Claims Act and no
fact issue exists regarding the trial court’s jurisdiction over UTHSCH.  In his third issue, Kamel argues that the
trial court was bound by its previous ruling dismissing with prejudice Kamel’s
claims against Dr. Sotelo, UTHSCH’s employee. 
Specifically, he argues that the trial court’s grant of UTHSCH’s plea to the jurisdiction is erroneous
because the trial court and this Court “previously ruled . . . that Dr. Tiffany
Sotelo was an employee of defendant UTHSCH during the relevant times herein,
and that [Kamel’s] claims against her can only be brought against
defendant UTHSCH by virtue of that employment and the [TTCA section]
101.106.”  Thus, Kamel is arguing that
the trial court had to have determined that it had jurisdiction over UTHSCH in
order to dismiss Dr. Sotelo, and he asserts that he “was forced to substitute”
UTHSCH as a defendant for Dr. Wang and Dr. Sotelo.  However, these assertions are not supported
by the record.

          Dr. Wang moved for dismissal under section
101.106(f), which is part of the TTCA Election of Remedies provision.  Section 101.106(f) provides:

If a suit
is filed against an employee of a governmental unit based on conduct within the
general scope of that employee’s employment and if it could have been brought
under this chapter against the governmental unit, the suit is considered to be
against the employee in the employee’s official capacity only.  On the employee’s motion, the suit against
the employee shall be dismissed unless the plaintiff files amended pleadings
dismissing the employee and naming the governmental unit as defendant on or
before the 30th day after the date the motion is filed.

 

Tex. Civ.
Prac. & Rem. Code Ann. §
101.106(f).  “Therefore, to be entitled
to dismissal under section 101.106(f), a defendant must show the plaintiff’s
suit (1) was based on conduct within the general scope of the defendant’s
employment with a governmental unit and (2) could have been brought under the [TTCA]
against the governmental unit.”  Hall, 232 S.W.3d at 928 (citing Tex. Civ. Prac. & Rem. Code Ann. §
101.106(f) and Phillips v. Dafonte,
187 S.W.3d 669, 675 (Tex. App.—Houston [14th Dist.] 2006, no pet.)).  The movant employee bears the burden of
proving that the suit could have been brought under the TTCA against a
governmental unit.  See id.  General medical
malpractice claims are not encompassed by the TTCA’s limited waiver of
sovereign immunity.  Id.     However, Dr. Wang was
never required to make any such showing and the trial court never ruled that he
had done so because Kamel voluntarily amended his pleadings removing Dr. Wang
as a defendant and adding UTHSCH.  Thus,
Kamel’s case is distinguishable from one in which the employee must satisfy the
burden of proving both prongs under 101.106(f).[6]  See
Hintz v. Lally, 305 S.W.3d 761, 767 (Tex. App.—Houston [14th Dist.] 2009, pet.
denied) (holding plaintiff’s voluntary dismissal of doctor distinguishes case
from circumstances in which trial court is presented with motion under
101.106(f) and must address the “could have been brought under this chapter”
clause in course of deciding whether to grant or deny motion).

          After Kamel amended his pleadings adding UTHSCH, Dr.
Sotelo moved for dismissal, arguing that she was entitled to dismissal under
101.106(a) or, alternatively, under 101.106(f). 
Section 101.106(a) provides:

The filing
of a suit under this chapter against a governmental unit constitutes an
irrevocable election by the plaintiff and immediately and forever bars any suit
or recovery by the plaintiff against any individual employee of the
governmental unit regarding the same subject matter.

 

Tex. Civ.
Prac. & Rem. Code Ann. §
101.106(a).  The trial court dismissed Dr.
Sotelo from the suit without stating which provision it relied on.  Dr. Sotelo could have been properly dismissed
under section 101.106(a) because Kamel’s addition of UTHSCH as a defendant
constituted an “irrevocable election” that barred “any suit or recovery . . .
against any individual employee of the governmental unit.”  See id.;
see also Hintz, 305 S.W.3d at 769
(holding plaintiff’s election to sue entity foreclosed any possibility of
adding employee in future pleadings); Villasan
v. O’Rourke, 166 S.W.3d 752, 759 (Tex. App.—Beaumont 2005, pet. denied) (“[W]hen
TTCA claimants elect to include the governmental unit as a party to a suit,
whether alone or in conjunction with a governmental employee, TTCA claimants
have made an irrevocable election of remedies that they will look solely to the
governmental unit for compensation for injury.”).  Thus, the trial court’s ruling dismissing Dr.
Sotelo from the suit did not constitute a ruling by the trial court that
Kamel’s claims could have been brought against UTHSCH under the TTCA.  

          Nor
does the opinion of this Court on Kamel’s appeal of Dr. Sotelo’s dismissal
constitute a ruling that his claims could have been brought against UTHSCH
under the TTCA.  The only question that our
opinion in Kamel v. Sotelo addressed
was whether Dr. Sotelo was considered an “employee” of a governmental entity,
in this case, UTHSCH, for purposes of section 101.106.  We determined that she was an employee, a
determination that was necessary to support either ground for dismissal under
section 101.106.  See Tex. Civ. Prac. &
Rem. Code Ann. §§ 101.106(a), (f).

          We
overrule Kamel’s second and third issues.

D.      Open Courts

          In
his fourth issue, Kamel contends that the dismissal of his claims against Dr. Sotelo
combined with the subsequent dismissal of his claims against UTHSCH violates
the open courts provision of the Texas Constitution. 

          “The
open courts provision states that ‘[a]ll courts shall be open, and every person
for an injury done him, in his lands, goods, person or reputation, shall have
remedy by due course of law.’”  Hintz, 305 S.W.3d at 772 (quoting Tex. Const. art. I, § 13).  “This provision, among other things,
prohibits the Legislature from unreasonably restricting common law causes of
action.”  Id. (quoting Thomas v. Oldham,
895 S.W.2d 352, 357 (Tex. 1995)).  When
challenging a statute as unconstitutional under the open courts provision, the
plaintiff must first demonstrate that the statute restricts a well-recognized
common law cause of action.  Id. (citing Flores v. Law, 8 S.W.3d 785, 787 (Tex. App.—Houston [1st Dist.]
1999, pet. denied)); see also Thomas,
895 S.W.2d at 357.

          Because
the open courts provision affects common law claims and not statutory claims,
the provision does not apply to claims under the TTCA.  Villasan,
166 S.W.3d at 766; see also Thomas,
895 S.W.2d at 357–58 (holding predecessor to section 101.106 did not violate
open courts provision because TTCA “broadened, rather than restricted, an
injured party’s remedies” because municipalities performing governmental
functions were completely immune from liability under common law); Hintz, 305 S.W.3d at 772–73 (holding
current version of section 101.106(f) does not violate open courts provision).

          We overrule Kamel’s fourth issue.

Conclusion

We affirm the
judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

 











[1]           See
Tex. Civ. Prac. & Rem. Code Ann.
§§ 101.001–.109 (Vernon 2005).





[2]
                      Section 101.106(a)
provides that “[t]he filing of a suit under this chapter against a governmental
unit constitutes an irrevocable election by the plaintiff and immediately and
forever bars any suit or recovery by the plaintiff against any individual
employee of the governmental unit regarding the same subject matter.”  Tex. Civ. Prac. & Rem. Code Ann. §
101.106(a).

Section
101.106(f) provides that “[i]f a suit is filed against an employee of a
governmental unit based on conduct within the general scope of that employee’s
employment and if it could have been brought under this chapter against the
governmental unit, the suit is considered to be against the employee in the
employee’s official capacity only.  On
the employee’s motion, the suit against the employee shall be dismissed unless
the plaintiff files amended pleadings dismissing the employee and naming the governmental
unit as defendant on or before the 30th day after the date the motion is
filed.”  Id. § 101.106(f).

 





[3]
          The opinion of this Court
referred specifically to section 101.106(f) and did not discuss
101.106(a).  We stated, “Sotelo moved for
a dismissal under subsections (a) and (f) of section 101.106 of the Texas Tort
Claims Act.  Because we find the
application of section 101.106(f) to be dispositive, we address it solely.”  Kamel v. Sotelo, No.
01-07-00366-CV, 2009 WL 793742, at *2 (Tex. App.—Houston [1st Dist.] 2009, no
pet.).

 





[4]
          See Tex. Civ. Prac. &
Rem. Code Ann. § 51.014(a)(8) (Vernon
2005) (allowing interlocutory appeal of grant or denial of plea to
jurisdiction of governmental unit).

 





[5]
          The terms “sovereign immunity”
and “governmental immunity” are often used interchangeably even though they
involve two distinct concepts.  Sovereign
immunity refers to the State’s immunity from suit and liability.  Governmental immunity refers to the immunity
of political subdivisions of the State.  See Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3 (Tex. 2003).  For
the sake of simplicity, we use the term sovereign immunity.





[6]
          Although Kamel alleges he was
“forced” to substitute, nothing in the record supports this statement.  There is no ruling by the trial court or
record of any hearing indicating that Dr. Wang’s motion was or would soon be
granted.