Opinion issued August 29, 2013



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00980-CV

————————————

**JOHN HARRISON, Appellant**

**V.**

**THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellee**

---

On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 10-82223

---

## MEMORANDUM OPINION

Appellant, John Harrison, challenges the trial court's order granting the plea to the jurisdiction of appellee, University of Texas Health Science Center at Houston ("UTHSCH"), in his suit against UTHSCH and others for medical

malpractice. In his sole issue, Harrison contends that the trial court erred in granting UTHSCH's plea and denying him the opportunity to replead his case to cure any jurisdictional defects.

We affirm.

## Background

Harrison's primary care physician diagnosed him as having liver disease and referred him for evaluation and treatment to Memorial Hermann Hospital, where Dr. Rafael Botero, a UTHSCH employee, treated Harrison. Botero ordered a chest x-ray, which was performed on December 17, 2008 and showed a "large loculated right pleural effusion" for which an underlying abnormality of the right lung could not be excluded. Harrison reported shortness of breath, but Dr. Luis Mieles, who performed an auscultation examination, found Harrison's chest "clear." On January 12, 2009, Dr. Michael Fallon, also a UTHSCH employee, examined Harrison. Neither Botero, Mieles, nor Fallon diagnosed Harrison as having a lung condition.

On June 25, 2009, Harrison underwent an electrocardiogram ("EKG") and abdominal computed tomography "CT" scan. And on July 6, 2009, doctors informed Harrison that some disease might be present in his lungs. On July 31, 2009, to remove a pleural effusion from his lung, Harrison underwent a thoracentesis, during which a small amount of "frank pus" was withdrawn.

2

Doctors diagnosed Harrison with an empyema and gave him antibiotics. He then underwent two additional chest surgeries and several courses of intravenous antibiotics to treat Klebsiella empyema.

On December 17, 2010, Harrison filed the instant suit against Drs. Botero and Fallon for failing to diagnose his lung infection. Botero and Fallon filed a motion to dismiss,[1] alleging that at the time of their care of Harrison, they were employees of a governmental unit, UTHSCH. Harrison then amended his petition, substituting UTHSCH as a defendant for Botero and Fallon, alleging additional instances of malpractice, and asserting that these instances waived UTHSCH's sovereign immunity.[2] Specifically, Harrison alleged that UTHSCH, through Botero and Fallon:

    a. Failed to diagnose [his] lung infection[;]

    b. Failed to diagnose [his] lung infection from x-ray, stethoscope, and/or other measures[;]

    c. Failed to timely diagnose [his] lung infection[;]

    d. Failed to timely diagnose [his] lung infection from x-ray, stethoscope, and/or other measures[;]

    e. Failed to compare [his] December 17, 2008 x-ray with earlier studies[;]

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (Vernon 2011).

[2]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2011).

f. Fail[ed] to follow up on abnormalities identified in [his] December 17, 2008 chest x-ray[;]

g. Fail[ed] to timely and appropriately treat [him;]

h. Fail[ed] to notify [him] of the abnormality seen on [his] chest x-ray[;]

i. Fail[ed] to review the x-ray report and/or failing to review the chest x-ray file for the x-ray performed on December 17, 2008[;]

j. Fail[ed] to refer [him] to pulmonology or thoracic surgery for treatment of the abnormality on his December 17, 2008 x-ray.

Harrison also alleged that UTHSCH was vicariously liable or liable through respondeat superior, by and through its employees.

UTHSCH filed an answer, plea to the jurisdiction, motion to dismiss, special exceptions, jury demand, and, later, a supplemental plea to the jurisdiction, asserting that Harrison had not pleaded a cause of action within a waiver of UTHSCH's sovereign immunity. Harrison responded that his pleaded allegations sufficiently alleged the "use or misuse of tangible personal property[,] which proximately caused [his] injuries," but attached no evidence. After an evidentiary hearing, the trial court granted UTHSCH's plea to the jurisdiction and motion to dismiss.

**Standard of Review**

When reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the plaintiff. *See Tex. Dep't of Parks & Wildlife*

4

*v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law that we review de novo. *See Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 226. In determining whether Harrison has alleged facts supporting a finding of a waiver of sovereign immunity, we look at the substance of his pleadings, rather than to his characterization of them.[3] *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

## Plea to the Jurisdiction

In his sole issue, Harrison argues that the trial court erred in granting UTHSCH's plea to the jurisdiction because he alleged in his petition "the use and/or misuse of several medical instruments and tools by Drs. Botero and Fallon . . . all of which are tangible personal property . . . [including] the mis-use of an x-

---

[3] UTHSCH asserts that it, in its plea to the jurisdiction challenged the existence of jurisdictional facts and we should consider the evidence it attached to its plea, i.e., Harrison's expert disclosures. UTHSCH also referenced Harrison's expert report in its reply to Harrison's response, but did not attach the document. Although Harrison had the opportunity to attach evidence to raise a fact issue as to the trial court's subject-matter jurisdiction, he did not do so and, thus, raised no fact issue as to the trial court's jurisdiction. Harrison has the burden to allege facts that affirmatively establish the trial court's subject-matter jurisdiction. *Texas Ass'n Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Because it is not necessary for us to review the evidence attached to UTHSCH's plea to the jurisdiction to resolve this issue, we decline to do so and consider only Harrison's pleadings. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

5

ray, stethoscope, and other evaluation tools . . ." UTHSCH asserts that the "graveman, true substance, essence, and/or primary focus of [Harrison's] complaint against [it] is that its doctors allegedly failed to identify, diagnose, and treat [Harrison's] lung infection," and, at most, his claims are allegations of error in medical judgment.

### Sovereign Immunity

As a general rule, the State of Texas and its governmental units are immune from tort liability unless the legislature has expressly consented to the suit by waiving immunity. *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002). Whether a governmental unit is immune from liability for a claim depends entirely upon statute. In the absence of a waiver of governmental immunity, a court has no subject-matter jurisdiction to entertain a suit against a governmental unit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). When a trial court lacks jurisdiction to hear a cause, it must dismiss the cause and refrain from rendering a judgment on the merits. *Li v. Univ. of Tex. Health Sci. Ctr.*, 984 S.W.2d 647, 654 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

A governmental unit may contest a trial court's authority to determine the subject matter of the cause of action by filing a plea to the jurisdiction. *Reyes v. City of Houston*, 4 S.W.3d 459, 461 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). An appeal may be taken from an interlocutory order that grants a plea to

6

the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2011).

### *Texas Tort Claims Act*

The relevant statute here is the Texas Tort Claims Act ("TTCA"). TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (Vernon 2011 & Supp. 2012). It is important to note that the legislature intended waiver of immunity under the TTCA to be limited. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). Pertinent to Harrison's claim, a governmental unit in Texas is liable for: "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2011). In order to state a claim under the TTCA based upon the use or misuse of tangible personal property, a plaintiff must allege that the property was used or misused by a governmental employee acting within the scope of his or her employment. *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 33 (Tex. 1983). The Texas Supreme Court has defined the word "use" in this context to mean "to put or bring into action or service; to employ for or apply to a given purpose." *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). The government employee's alleged negligence must be the proximate cause of the injury and occur under circumstances such that there would

7

be private liability. *Salcedo*, 659 S.W.2d at 31–32; *Bossley*, 968 S.W.2d at 342–44 ("personal injury or death must be proximately caused by a condition or use of tangible personal or real property").

Under the element of proximate cause, the involvement of property alone is insufficient to waive sovereign immunity. *Id.* at 342. Rather, there must be a "direct and immediate relationship" between the injury and the "use" of the property. *Univ. of Tex. Med. Branch Hosp. at Galveston v. Hardy*, 2 S.W.3d 607, 609 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Bossley*, 968 S.W.2d at 342). Thus, use or misuse of the property, not the property itself, must have actually caused Harrison's injury. *See Miller*, 51 S.W.3d at 587–88; *Tex. Natural Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001) (property's use "must have actually caused the injury"). Incidental involvement of the property is insufficient to establish waiver. *Bossley*, 968 S.W.2d at 343. Property does not "cause" the injury if it simply furnishes the condition that makes the injury possible. *See id.* However, this is not to say that the tangible property has to have physically injured the plaintiff in order for proximate cause to exist. *See id.* The Texas Supreme Court requires simply a causal nexus between the use of the property and the plaintiff's injury. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003); *Bossley*, 968 S.W.2d at 342-43.

8

### Harrison's Claims

In regard to Harrison's claims that Drs. Botero and Fallon failed to "diagnose [his] lung infection," failed to "timely diagnose [his] lung infection," failed to "follow-up on abnormalities identified in [his] December 17, 2008 x-ray," failed to "timely and appropriately treat [him]," failed to "notify [him] of the abnormality seen on [his] chest x-ray," and failed to "refer [him] to pulmonology or thoracic surgery for treatment," we note that these claims concern the misuse of information, errors in medical judgment, and general medical negligence; they do not involve the use of tangible property. Accordingly, we hold that these claims do not fall within the waiver of sovereign immunity in TTCA section 101.021(2). *See Kamel v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 333 S.W.3d 676, 686 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (concluding that claims for failure to perform treatment and use acceptable medical practices are general medical negligence claims and not within the waiver of immunity).

In two of Harrison's listed allegations, he specifies that UTHSCH, through Drs. Botero and Fallon, failed to diagnose his lung infection "from x-ray, stethoscope, and/or other measures." It is unclear whether Harrison is alleging that the doctors negligently used or misused an x-ray machine or the x-ray film produced from a machine. It is undisputed that the x-ray machine did not itself cause his injury, nor did he allege that the x-ray machine was defective in any way

9

such that it produced inaccurate information that led to Harrison's injury. Harrison's factual allegations as to the x-ray machine and that it produced important diagnostic information that was either not reviewed or incorrectly reviewed by Botero and Fallon. And Harrison does not make the factual allegation that Botero or Fallon actually used the x-ray machine. Although Botero ordered the chest x-ray that was performed on December 17, 2008, he did not himself "use" the x-ray machine on Harrison. Accordingly, to the extent that Harrison claims are based on the alleged use or misuse of an x-ray machine, we hold that they do not support a waiver of sovereign immunity.

Harrison made two specific allegations as to the chest x-ray performed in December 2008: (1) UTHSCH "fail[ed] to compare [his] December 17, 2008 x-rays with earlier studies" and (2) "fail[ed] to review the x-ray report and/or fail[ed] to review [his] chest x-ray film for the x-ray performed on December 17, 2008." In his response to UTHSCH's plea to the jurisdiction, Harrison asserted that the true substance of his complaint is that Drs. Botero and Fallon "misinterpreted a December 17, 2008 x-ray," which led to the "misdiagnosis of [his] lung infection." However, the true nature of Harrison's allegations is that *the information* produced by the x-ray machine was misused, or not used at all.

Such allegations that the information obtained from a medical machine about a patient's condition was misused, or not used at all, do not support a waiver

10

of immunity under the TTCA. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (holding that medical center's alleged failure to record information in patient's medical records and alleged failure to rely on recorded information did not constitute use, misuse, or nonuse of tangible personal property under the TTCA); *Redden v. Denton Cnty.,* 335 S.W.3d 743, 751 (Tex. App.—Fort Worth 2011, no pet.) (misinterpretation of EKG machine's data, which led to improper treatment and death, not allegation of a misuse of tangible personal property); *Tex. Tech Univ. Health Sci. Ctr. v. Ward*, 280 S.W.3d 345, 353–55 (Tex. App.—Amarillo 2008, pet denied) (alleged misuse of information obtained from fetal monitor not allegation that monitor incorrectly used or results incorrect); *Kelso v. Gonzales Health Sys*., 136 S.W.3d 377, 382 (Tex. App.— Corpus Christi 2004, no pet.) (noting if medical machine correctly used, any misuse or nonuse of obtained information does not support waiver of immunity). Accordingly, to the extent that Harrison's claims are based on the alleged misuse of the information obtained from an x-ray machine, specifically the x-ray film or report, we hold that they do not support a waiver of sovereign immunity under the TTCA. *See York*, 871 S.W.2d at 179.

Remaining is Harrison's claim that UTHSCH, through Drs. Botero and Fallon, failed to timely diagnose his lung infection "from . . . stethoscope." Harrison has alleged that a stethoscope was involved in the doctors' failure to

11

timely diagnose his condition; however, he has not alleged any manner in which the stethoscope was negligently used. In other words, he has not pleaded or provided evidence as to how a stethoscope was misused by the doctors, or how its misuse is causally connected to his injury. Drs. Botero and Fallon did "bring into . . . service" and "employ" a stethoscope while treating Harrison; however, the fact that "some property is merely involved is not enough" to support a waiver of immunity. *Miller*, 51 S.W.3d at 588; *Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 470 (Tex. App.—Dallas 2009, no pet.) (fact that pleadings identify tangible personal property used during procedure does not transform claim of misdiagnosis into claim for use or misuse of property). Accordingly, we hold that Harrison's allegations concerning the doctors' use of a stethoscope does not support a waiver of sovereign immunity under the TTCA. *See Miller*, 51 S.W.3d at 588.

In support of his assertion that he did allege the misuse of tangible personal property, Harrison relies on *Salcedo v. El Paso Hospital District,* 659 S.W.2d 30 (Tex. 1983). In *Salcedo*, the plaintiff alleged that hospital employees had misused various pieces of medical equipment, including cardiac monitoring equipment by improperly reading and interpreting the graphs and charts produced by the equipment. *Id*. at 31. The Texas Supreme Court reasoned that "reading" and "interpreting" constitute the purposes for which an EKG graph is used to diagnose

12

myocardial infarction, and, therefore, the plaintiff had alleged an injury based on the use of tangible property. *Id.* at 33. When *Salcedo* was decided, the TTCA provided for a waiver of sovereign immunity for injury caused by "some" condition or "some" use of tangible property. *See* Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, sec. 3, 1983 Tex. Gen. Laws 3084, 3085 (repealed, recodified, and amended 1985) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 101.021). At that time, the statute also contained a provision requiring liberal construction of the TTCA. *See* Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9, 1985 Tex. Gen. Laws 3242, 3322. Two years after *Salcedo* was decided, the Texas Legislature deleted the word "some" and repealed the liberal construction provision, even though there was a legislative comment that the "Act [was] intended as a recodification only," without any intended substantive changes. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, §§ 1, 9–10, 1985 Tex. Gen. Laws 3242, 3303, 3322. Since then, the supreme court has narrowed *Salcedo*, but not expressly overruled its holding. *See Whitley*, 104 S.W.3d at 543; s*ee also Redden v. Denton Cnty.*, 335 S.W.3d 743, 748–49 (Tex. App.—Fort Worth 2011, no pet.) (discussing *Salcedo* and subsequent supreme court cases narrowing its holding and the TTCA's immunity waiver). Many intermediate courts of appeal consider *Whitley* to have overruled *Salcedo*. *See, e.g., Tex. Tech Univ. Health Sci.*

13

*Ctr. v. Ward*, 280 S.W.3d 345 (Tex. App.—Amarillo 2008, pet. denied); *Lanphier v. Avis*, 244 S.W.3d 596 (Tex. App.—Texarkana 2008, pet. dism'd as moot); *Kelso*, 136 S.W.3d at 382; *Anderson v. City of San Antonio*, 120 S.W.3d 5 (Tex. App.—San Antonio 2003, pet. denied).

Harrison also relies on *University of Texas Medical Branch at Galveston v. Estate of Blackman*, 169 S.W.3d 712 (Tex App.—Waco 2005, pet. granted), *vacated and appeal dismissed for want of jurisdiction*, 195 S.W.3d 98 (Tex. 2006) (per curiam).  However, this opinion was vacated by the Texas Supreme Court and has no authoritative value.

Finally, Harrison relies on *Texas Tech University Health Science Center v. Lucerno*, 234 S.W.3d 158 (Tex. App.—El Paso 2007, pet. denied) and *University of Texas Medical Branch Hospital at Galveston v. Hardy*, 2 S.W.3d 607, 610 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).   Both cases are readily distinguishable.  The plaintiff's allegations in *Lucerno* differ significantly from those made by Harrison.  There, the plaintiff pleaded "the negligent misuse of equipment in the performance of the July 2001 ERCP;" and the "negligent misuse of equipment in August 2001, specifically an abdominal CT scan that indicated liver abscess."  *Lucerno*, 234 S.W.3d at 169.  Harrison has made no such allegation about the negligent misuse of equipment; rather, his pleadings simply state his

claim based on the "fail[ure] to diagnosis [his] lung infection from x-ray, stethoscope, and/or other measures."

In *Hardy*, the plaintiff alleged that hospital employees had been negligent in monitoring a cardiac monitor. 2 S.W.3d at 610. There, the employees failed to respond timely to a cardiac monitor, which caused a delay in resuscitation, and the deprivation of oxygen caused the patient's death. *Id.* Unlike here, there was no attenuated or weak connection to the plaintiff's injury; rather, the delayed response was "contemporaneous and directly connected" to the injury. *Id.*

We note that in *Miller*, the Texas Supreme Court reviewed a suit for negligence brought against staff at the Texas Department of Criminal Justice ("TDCJ"). *Miller*, 51 S.W.3d at 585. A TDCJ inmate began suffering from multiple symptoms that included nausea and severe headaches. *Id.* TDCJ staff treated the inmate, but his symptoms continued and he died a month later after being diagnosed with cryptococcal meningitis. Id. The inmate's surviving spouse alleged that TDCJ staff improperly read and interpreted fever-detecting equipment, and improperly used clinic facilities and equipment to diagnose and treat him. *Id.* The court concluded that although TDCJ staff's treatment of the inmate may have suppressed the symptoms of meningitis, it did not actually cause his death. *Id*. at 588. Instead, the inmate's "meningitis became progressively worse due to the

15

passage of time and an alleged error in medical judgment; there [was] no evidence that any defendant's acts hastened or exacerbated his decline." *Id.*

Here, as in *Miller*, Harrison has not alleged that Drs. Botero and Fallon's misuse of tangible property caused his injuries. Rather, Harrison's lung infection became worse through the passage of time and an alleged error in medical judgment. *See id*.

His conclusory allegation concerning the involvement of a stethoscope unaccompanied by a description of a defective condition or an explanation of how the stethoscope was used does not support a waiver of sovereign immunity under the TTCA. *See Taylor v. Univ. of Tex. Health Ctr. at Tyler*, No. 12-01-00381-CV, 2002 WL 31323413, at *5–6 (Tex. App.—Tyler Oct. 9, 2002, pet. denied) (not designated for publication). Having held that none of Harison's allegations support a waiver of sovereign immunity under the TTCA, we further hold that the trial court did not err in granting UTHSCH's plea to the jurisdiction.

We overrule the portion of Harrison's issue relating to the trial court's grant of UTHSCH's plea to the jurisdiction.

### *Opportunity to Amend Pleadings*

Harrison argues that this Court should remand the case to allow him an opportunity to replead to cure any jurisdictional defects because the trial court erred in not affording him such an opportunity.

16

Harrison asserts that although the trial court did not explicitly deny him the opportunity to replead his petition to cure any jurisdictional defects, the "denial is implicit given the fact that the judge granted [UTHSCH's] plea to the jurisdiction in light of [his] request . . . to cure any jurisdictional defects." UTHSCH asserts that Harrison had such an opportunity in the nine months during which the trial court had taken its plea under advisement. It further asserts that he "could have filed amended pleadings at any time . . . but did not" and has never offered "different or new facts or pleadings[,] which would bring his claims within the narrow waiver of immunity of the [TTCA]."

Having held that Harrison did not state a claim for which UTHSCH's sovereign immunity is waived, we must decide if Harrison's petition is incurably defective or whether it may be amended to allege a cause of action that is within the trial court's jurisdiction. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

A plaintiff generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). We conclude that an amended petition could not have cured the jurisdictional defects in Harrison's petition. *See, e.g., Edwards v. City of Tomball*, 343 S.W.3d 213, 223 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

17

We overrule the portion of Harrison's issue relating to his request to replead.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.