# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-01-00162-CV

**Luke Axtell, Appellant**

**v.**

**The University of Texas at Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. 99-00308, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

Appellant Luke Axtell sued the University of Texas at Austin (the University) and the University men's athletic director DeLoss Dodds and former head men's basketball coach Thomas Penders for negligence and for statutory violations pursuant to the Family Educational Rights and Privacy Act. Axtell contended that his educational records were faxed from a machine in the men's basketball office to a local radio station, which then broadcast the information. On appeal, Axtell argues that the trial court erred in granting the University's plea to the jurisdiction because his cause of action is permitted by the limited waiver of governmental immunity for injuries caused by tangible personal property under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1997). We hold that the tangible personal property exception of the Act does not encompass an injury resulting from the disclosure of confidential information, however that information is transmitted.

## FACTUAL BACKGROUND

Axtell was a freshman basketball player at the University during the 1997-98 academic year until he was suspended for academic deficiencies on March 17, 1998. The Austin American Statesman reported the suspension of Axtell and others and also related that several players were disgruntled with Coach Penders. On March 18, a fax message containing a portion of Axtell's educational records was sent from the men's basketball office to two local radio stations, KVET and KJFK. KVET subsequently broadcast the information.

Axtell sued the University, Dodds, and Penders for negligence under the Texas Tort Claims Act and for statutory violations under the federal Family Educational Rights and Privacy Act (FERPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1997); 20 U.S.C. § 1232g (2000). The University moved to dismiss Axtell's suit against it on the ground that the trial court lacked subject matter jurisdiction because the University had not waived its governmental immunity. The trial court granted the University's motion and dismissed Axtell's suit against it.

## STANDARD OF REVIEW

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.) (citing *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). "A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action." *Caldwell*, 23 S.W.3d at 135 (citing *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.)). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's

pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Id*. Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Id.*

The supreme court has recently discussed pleas to the jurisdiction in the context of the Tort Claims Act. *See Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001). The court found that because the Act defines a narrow set of circumstances in which a government entity waives sovereign immunity, an appellate court must first determine the scope of the waiver granted by the terms of the Act, and second examine the specific facts of the case to determine if they fall within the Act's scope. *Id*. at 587 (citing *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996), for the first step)). In reviewing a plea to the jurisdiction, we take the factual allegations of the plaintiff's petition as true. *Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 469 (Tex. 1949).

**DISCUSSION**

The Tort Claims Act provides a limited waiver of sovereign immunity when personal injury is "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 1997). This waiver is to be liberally construed in order to effectuate the purposes of the Act. *Michael v. Travis County Hous. Auth.*, 995 S.W.2d 909, 912 (Tex. App.—Austin 1999, no pet.). The supreme court has cautioned, however, against an expansive reading of the waiver that would cause the exception to lose its limited character: "[T]he waiver of

3

immunity in the Tort Claims Act is not, and was not intended to be complete. Arguments for applications of the Act that would essentially result in its waiver becoming absolute must therefore be rejected as contrary to the Act's fundamental purpose." *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 342 (Tex. 1998).

In his second issue on appeal, Axtell concedes that he cannot maintain a cause of action under FERPA against the University, so we need not address that issue.

In his first issue, Axtell maintains that the University used tangible personal property, a fax machine in the men's basketball office, to send his confidential educational records to KVET, and that this use of the fax machine caused his injuries. Therefore, according to Axtell, the University has waived its immunity from suit and is subject to liability under the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (making government entity liable for injuries caused by tangible property to the same extent as a private property owner); *see also Miller*, 51 S.W.3d at 587 (stating that although section 101.021(2) speaks to liability only, the Act waives immunity both from suit and liability).

The University maintains that Axtell has not pleaded facts that establish the applicability of the tangible personal property exception in the Act. Both parties agree that a fax machine is tangible property; the University contends, however, that the cause of Axtell's alleged injuries was not the use of the fax machine, but rather the disclosure of confidential information. *See University of Tex. Med. Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994) (holding that "information, which may or may not be recorded . . . does not constitute tangible personal property under section 101.021(2) of the Texas Tort Claims Act and that the State has not waived

4

governmental immunity for negligence involving the use, misuse, or nonuse of information"); *see also Dear v. City of Irving*, 902 S.W.2d 731, 737 (Tex. App.—Austin 1995, writ denied) (relying on *York* to hold that the tangible personal property exception does not permit a cause of action alleging misuse of information).

Axtell relies on *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30, 33 (Tex. 1983), which held that by improperly reading and interpreting the graphs produced by electrocardiographic equipment, hospital staff misused tangible personal property sufficiently to waive the hospital's immunity under the Act. While the supreme court has not overruled *Salcedo*, it has in a subsequent decision expressly limited the decision to its facts. *See Bossley*, 968 S.W.2d at 342 (citing *York*, 871 S.W.2d at 178). In addition, the cases applying the *York* decision have provided guidance for determining when a case involves the use of information rather than the use of tangible property that may transmit information. We will briefly survey *Salcedo* and the subsequent cases addressing the tangible personal property exception in the Tort Claims Act to explain why Axtell's reliance on *Salcedo* is misplaced.

In *Salcedo*, a patient who had gone to a government hospital was sent home even though his electrocardiogram charts showed a classic pattern for a heart attack. *Salcedo*, 659 S.W.2d at 31. He died shortly after going home; an autopsy revealed that Mr. Salcedo's death was the result of myocardial infarction. *Id.* The plaintiff alleged that the hospital staff misused electrocardiographic equipment by improperly reading and interpreting the graphs it produced. *Id.* The court found that the plaintiff had stated a cause of action under the Tort Claims Act, explaining that "[r]eading and interpreting are purposes for which an electrocardiogram graph is used or employed in diagnosing

5

myocardial infarction." *Id.* at 33. When the charts were misread and the diagnosis missed, the equipment was misused, and thus the plaintiff was able to state a cause of action in which misuse of tangible personal property caused the alleged injuries. *See id.* Axtell argues that by using a fax machine to transmit his confidential educational information, the University used tangible personal property in a manner that caused his injury, much as the hospital staff used electrocardiograms in *Salcedo*.[1]

Initially, we note the questionable viability of *Salcedo*. The last time it was relied on by the supreme court was nine years ago in the plurality opinion of *Texas Department of Mental Health and Mental Retardation v. Petty*, 848 S.W.2d 680, 684 (Tex. 1992). Four members of the court found that paper medical records consisting of test results, evaluations, and medical records, which were misinterpreted over the years to improperly institutionalize a woman for most of her adult life, were sufficiently similar to the electrocardiogram misinterpreted in *Salcedo*. *Id.* at 683. The plurality found that Ms. Petty had stated a cause of action under the Act because the medical documents were intended to be used for purposes of diagnosis, as were the graphs in *Salcedo*, hence there was a sufficient nexus between her injury and tangible property to waive the Department's immunity. *Id.* Four judges of the court dissented, warning that the plurality's opinion, like *Salcedo*, virtually eliminated the requirement of causation between the injury and the use of tangible property. *Id.* at 688 (Cornyn, J., dissenting). The dissenting judges expressed their fear that immunity could

---

[1] Axtell additionally relies on *Texas Department of Corrections v. Winters*, 765 S.W.2d 531 (Tex. App.—Beaumont 1989, writ denied). The *Winters* decision, following *Salcedo*, held that the use of telegraph and telephone equipment to transmit an erroneous message that a family member had died constituted misuse of tangible personal property, thereby subjecting the Department to liability. *Id.* at 532.

be waived in any case in which the plaintiff was able to identify the existence of a physical object, no matter how remotely related to the harm. *See id.* (Cornyn, J., dissenting). The ninth justice joined the plurality's result in *Petty* but not its rationale, leaving the decision with little or no precedential value. *See id.* at 685 (Cook, J., concurring in judgment only); *see also York*, 871 S.W.2d at 176 (recognizing *Petty*'s limited precedential value).

In *York*, the court embraced the concerns voiced by the dissenters in *Petty. See York*, 871 S.W.2d at 179. Mr. York alleged that the staff at a university hospital had failed to diagnose his son's broken hip, thus causing him to suffer injury. *Id.* at 176. Analogizing to the facts in *Salcedo*, the plaintiff argued that his son's injuries were caused by the misuse of tangible property in that the staff's failure both to include pertinent information in his son's medical records and to implement recommendations contained in the records prevented a timely diagnosis of the injury. *Id.* The court disagreed, refusing to extend the holding in *Salcedo* to these facts. *Id.* at 178.

The *York* court emphasized the unique use of property in *Salcedo* that was found to have satisfied the waiver in section 101.021(2): the plaintiff alleged that a misuse of the electrocardiographic equipment caused the misdiagnosis that led to Mr. Salcedo's death. *Id.* at 178. In contrast, the court explained, Mr. York had not alleged a misuse of any hospital device or equipment, but rather had alleged that the staff misused or ignored *information* that was contained in his son's medical charts. *Id.* at 178-79. The court announced, "*Salcedo* does not permit claims against the State for misuse of information." *Id.* at 179. The mere fact that the information was put into writing did not transform Mr. York's claim into a misuse of tangible property. *Id*. at 178-79. The son's injury was caused by a misuse of information; thus immunity had not been waived.

7

Axtell's claim more closely resembles the claim in *York* than the claim in *Salcedo*. His injury was caused by the disclosed information, not by any misuse of the fax machine that transmitted his grades to the media. In *Salcedo*, a close connection existed between the misuse of the equipment and the harm suffered: the purpose of the electrocardiographic equipment was to assist doctors in making a proper medical diagnosis. *See Salcedo*, 659 S.W.2d at 33; *see also Texas Youth Comm'n v. Ryan*, 889 S.W.2d 340, 344 (Tex. App.—Houston [14th Dist.] 1994, no writ) (stating that the electrocardiogram machine in *Salcedo* directly impacted the person whose heart condition was being traced). The fax machine was not a device that aided any individual at the University in the decision to release or communicate Axtell's confidential information. As a physical object that simply facilitates the communication of information, the fax machine did not cause Axtell's harm; it was never intended to assist the user in deciding on a course of action.

In other words, the negligence alleged by Axtell was not in the *manner* of the University's release of the records but in the *fact* of its release of the records. The fax machine did not create information as did the equipment in *Salcedo*; it merely transmitted it. Axtell would have suffered the same injury had the confidential information been conveyed to the station manager by telephone, by mail, or by hand delivery. Therefore, the causal connection between the misuse of tangible property and the injury suffered in *Salcedo* is lacking in the instant case. As *York* dictates, to establish that immunity has been waived, a plaintiff must allege a cause of action in which the tangible property is the instrumentality of the harm. In the present case, the real substance of Axtell's complaint is that the men's athletic department released academic information that it was under a legal obligation to keep confidential. Information is not transformed into tangible property when it

8

is communicated by a fax machine, a telephone, a telegram, or a computer. *See Sawyer v. Texas Dep't of Criminal Justice*, 983 S.W.2d 310, 312 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (the medium used to communicate information does not alter its intangible nature). The use of the fax machine did not cause Axtell's injury.

Appellant concedes that the machine did not directly cause injury to Axtell but suggests that the property "does not have to be the instrumentality of the harm." Axtell cites as support for this proposition the supreme court's decision in *Bossley*, but the holding in *Bossley* runs directly counter to Axtell's suggestion. In that case, the supreme court emphasized the importance of a causal nexus between the tangible property used and the injury suffered. The plaintiffs complained that the facility's failure to keep its doors locked enabled their son to escape and ultimately led to his death. *See Bossley*, 968 S.W.2d at 340-41. The lower court had relied on *Salcedo* to hold that the involvement of tangible property in the circumstances that led to the young man's death was sufficient to waive the facility's immunity. *See id.* at 341. The court reversed the lower court's judgment, finding the unlocked doors were too attenuated from the eventual circumstance of the boy's death, which occurred after he escaped into the community and jumped in front of a truck. *Id.* at 342-43. "The requirement of causation is more than mere involvement, although exactly how much more has been difficult for courts to define. If only involvement were required, the waiver of immunity would be virtually unlimited, since few injuries do not somehow involve tangible personal or real property." *Id.* at 343. The court emphasized that the injury must be proximately caused by the use of tangible property, *see id.* at 342, explaining that "[p]roperty does

9

not cause injury if it does no more than furnish the condition that makes the injury possible." *Id*. at 343.

The supreme court has made it clear that the state does not waive its immunity by using or misusing information. *See York*, 871 S.W.2d at 179. Intermediate appellate courts have followed *York*'s holding. *See, e.g., Sawyer*, 983 S.W.2d at 312 (the source of the alleged injuries was not the computer printout used to communicate an erroneous parole review date to a prisoner, but rather the information conveyed); *Martinez v. City of Abilene*, 963 S.W.2d 559, 560 (Tex. App.—Eastland 1998, no pet.) (the City's failure to properly record data did not state a claim for misuse of the computer but rather one for misuse of information); *Dear*, 902 S.W.2d at 737 (alleged injuries were not caused by the computers, telephones, or records used in the city's investigation but by information). "Information or misinformation remains *information*, whether it is transmitted by electronic equipment or by word of mouth. The medium used to communicate information does not alter its intangible nature." *Sawyer*, 983 S.W.2d at 312 (emphasis in original). We decline to extend *Salcedo* to these facts and overrule Axtell's issue.

**CONCLUSION**

While *Salcedo* has not been overruled, recent supreme court and intermediate appellate court cases have helped to distinguish cases where the cause of the injury is the use or misuse of information. The real substance of Axtell's complaint is that he was harmed by the disclosure of confidential information. We hold that his claim does not state a cause of action under

section 101.021(2) of the Tort Claims Act and affirm the trial court's grant of the University's plea to the jurisdiction.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   January 17, 2002

Publish