**Reversed and Rendered and Memorandum Opinion filed February 20, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00232-CV

---

### THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON, Appellant

### V.

### RAKISHA DICKERSON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF LONDYN R'MANI DICKERSON, DECEASED, Appellee

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-27667**

---

## M E M O R A N D U M     O P I N I O N

Rakisha Dickerson, Individually and as Personal Representative of the Estate of Londyn R'Mani Dickerson, Deceased, sued the University of Texas Health Science Center at Houston (UTHSCH). Dickerson alleged that UTHSCH caused her infant daughter's death by negligently failing to inform Dickerson of

the results of certain medical diagnostic tests performed on her daughter. UTHSCH filed this interlocutory appeal from the trial court's denial of its plea to the jurisdiction, in which it asserted Dickerson failed to plead and prove a waiver of sovereign immunity. We reverse the trial court's order and render judgment dismissing Dickerson's suit against UTHSCH for lack of jurisdiction.

## BACKGROUND

The underlying lawsuit arises from the alleged failure of UTHSCH's employees to notify Dickerson of medical test results from a blood culture showing that her infant daughter had a streptococcus infection.

According to the facts alleged in her petition, Dickerson took her infant daughter for treatment at the emergency department of Children's Memorial Hermann Hospital on February 24, 2010; while Dickerson and her daughter were there, a physician ordered a blood culture and then discharged the infant.[1] UTHSCH does not dispute the blood culture tested positive for Group B Streptococcus; Dickerson alleges that this test result never was communicated to her.

Dickerson alleges that she brought her daughter to the hospital again on March 18, 2010, because she was suffering from seizures and other complications from the streptococcus infection. Dickerson's daughter was treated for the infection but died on May 2, 2010.

Dickerson's suit alleges that UTHSCH negligently failed to communicate to her the results of the diagnostic medical test, and that this negligence caused her

---

[1] Dickerson alleges that the attending physicians, residents, and fellows assigned to clinical rotations in the emergency department are faculty members and graduate medical students at the University of Texas Medical School at Houston, an academic unit of UTHSCH.

daughter's death. In her First Amended Petition, Dickerson alleged that UTHSCH's employees:

> while acting in the course and scope of their employment, were negligent in failing to contact, notify, warn, counsel, and advise Plaintiff that her infant daughter, Londyn Dickerson, was at extreme risk of death or permanent neurologic impairment and instruct Plaintiff Dickerson that Londyn needed to return to the hospital immediately for life-saving care. The Plaintiff's injury (the tragic and untimely death of Londyn Dickerson due to untimely treated Group B Streptococcus infection) was directly and proximately caused by the negligent operation or use (including, but not limited to the non-use) of motor driven equipment under circumstances in which the Defendant's employees would have been personally liable to the plaintiff under Texas law. Additionally, the Plaintiff's injury was caused by a negligent "use" or mis-use of tangible personal property (the February 25, 2010 blood culture test).

Dickerson further alleges that UTHSCH's employees proximately caused the death of her daughter:

> 1. By negligently operating, using, mis-using or failing to reasonably and prudently use the Emergency Department telephone (motor-driven equipment) in the following manner:
>
> A. By negligently operating, using and/or mis-using the Emergency Department Telephone (e.g., by obtaining and dialing the wrong telephone number or by mis-dialing the correct telephone number and thereby negligently calling or contacting someone *other than* Plaintiff Dickerson to notify, warn, counsel, advise and instruct regarding the potentially lethal infection in her baby);
>
> B. By negligently operating, using and/or mis-using the Emergency Department telephone by calling Plaintiff Dickerson or other family member and not leaving a message, getting interrupted prior to leaving a message and failing to call back, or not leaving an adequately urgent and instructive warning message which conveyed the gravity of potential harm to Londyn Dickerson if she was not returned to the Emergency Department immediately for a course of curative IV antibiotics;

3

C. By negligently operating, using and/or mis-using the Emergency Department telephone by instructing a nurse, unit clerk, unit secretary, or other individual under the UTHSCH physician employee's control to contact Plaintiff Dickerson, resulting in a wrong number, a mis-dialed number, not leaving a message, getting interrupted prior to leaving a message and failing to call back, or not leaving an adequately urgent and instructive message which conveyed the gravity of potential harm to Londyn Dickerson if she was not returned to the Emergency Department immediately for a course of curative IV antibiotics;

D. By negligently failing to operate and use the Emergency Department telephone to call Plaintiff Dickerson to notify, warn, counsel, and advise her of Londyn Dickerson's potentially lethal GBS infection and instructing to return the patient to the hospital for life-saving IV antibiotics.

2. By negligently operating, using, mis-using or failing to reasonably or prudently use the Emergency Department computer, electric typewriter, or dictation system (Electric motor-driven equipment) in the following manner:

A. By negligently operating, using and/or mis-using the Emergency Department computer, electric typewriter or dictation system by preparing a letter intended to notify, warn, counsel, advise and/or instruct Plaintiff Dickerson of Londyn's life-threatening condition which was incorrectly addressed or inadequately posted and therefore delivered to someone *other than* Plaintiff Dickerson;

B. By negligently failing to use the Emergency Department computer, electric typewriter or dictation system to prepare a letter to express mail or deliver by overnight courier delivery to Plaintiff Dickerson to contact, notify, warn, counsel and advise her of Londyn's potentially lethal condition with instructions to return the baby immediately to the hospital for life-saving IV antibiotics;

3. By negligently failing to use one of the patrol vehicles of the University of Texas Police Department to go to Plaintiff Dickerson's residence and notify her in person of the potentially lethal GBS infection and instruct her to bring Londyn Dickerson back into the hospital for a course of curative IV antibiotics; and,

4. By the negligent use and/or mis-use of the February 25, 2010 blood culture test (tangible personal property), the proper and appropriate

use of which diagnostic test encompassed and included prompt contact and notification of the patient (or her representative) of the positive blood culture results and their life-threatening implications, and instructing that the patient be returned to the hospital immediately for definitive and curative antibiotic therapy.

Dickerson also included a catch-all allegation of "other and further acts and/or omissions of negligence as will be revealed in the course of discovery in this case."

UTHSCH asserted a plea to the jurisdiction in its answer, and it filed a first amended plea to the jurisdiction and motion to dismiss on September 7, 2012. After briefing and a non-evidentiary hearing, the trial court denied UTHSCH's plea to the jurisdiction by order signed February 22, 2013. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(8).

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex.1999). A plea questioning the trial court's jurisdiction raises a question of law that is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

In conducting our review, we first look to the pleadings to determine if jurisdiction is proper. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the

5

plaintiff should be afforded the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

## ANALYSIS

In one issue, UTHSCH asserts that the trial court erred by denying its plea to the jurisdiction and motion to dismiss because Dickerson failed to allege a waiver of sovereign immunity under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109.

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which governmental units have been sued unless the state consents to suit. *Miranda*, 133 S.W.3d at 224. UTHSCH is a "governmental unit" for these purposes. *See Univ. of Texas Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 104 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

The Tort Claims Act provides a limited waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 224. Immunity is waived when a claimant suing a governmental unit for personal injury or death pleads and shows that the injury or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment, or that the injury or death arises from a negligent condition or use of tangible personal or real property. Tex. Civ. Prac. & Rem. Code § 101.021. Section 101.021 provides:

> A governmental unit in the state is liable for:
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.

Dickerson alleged sovereign immunity was waived based on UTHSCH's use of the test results as personal property. Dickerson further alleged negligent use, misuse, or non-use of the following motor-driven equipment: the emergency department telephone for notice by phone call; the emergency department computer, electric typewriter or dictation system for preparing a written warning; and the University police patrol vehicles for personal notification.

UTHSCH argued that Dickerson's claims do not fall within one of the Tort Claims Act's recognized waiver categories because the claims against it are predicated on the alleged use, nonuse or misuse of information in the form of medical diagnostic test results. UTHSCH asserts that information in the form of medical diagnostic test results is not tangible personal property as a matter of law.

The Texas Supreme Court distinguishes between tangible property that is itself the instrument of harm, and tangible property that merely conveys information in a written form. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994). While paper itself can be touched, handled, and seen, the court reasoned that intangible medical information recorded on paper is not tangible personal property. *Id.* The court held in *York* that the state medical

entity's alleged failure to record information in a patient's medical records and its failure to rely on recorded information did not involve the use of tangible personal property so as to implicate a waiver of immunity under the Tort Claims Act. *Id.* at 178–79.

This court recently addressed a similar issue in *University of Texas Medical Branch v. Qi,* 402 S.W.3d 374 (Tex. App.—Houston [14th Dist.] 2013, no pet.), in which we held that the trial court lacked subject matter jurisdiction. Qi claimed that the defendant's jurisdiction-destroying immunity was waived because its employees negligently read and interpreted the results of blood pressure testing equipment and urine test strips, and thereby failed to diagnose preeclampsia. She attributed the stillbirth of her child and her own related injuries to the alleged failure to diagnose preeclampsia. *Id.* at 377–78.

In determining that the trial court lacked subject matter jurisdiction because immunity was not waived, we recognized that "use" of property under the Tort claims Act requires more than reading and interpreting data produced by medical equipment. *Id.* at 388. We cited *York's* holding that information is intangible, and that such information is not transformed into tangible property when it is recorded on paper or by a medical device. *Id.* at 387. We concluded that Qi's claim did not invoke the Tort Claims Act's limited waiver of sovereign immunity. Her claim focused on an alleged failure to timely diagnose and treat preeclampsia; these allegations did not satisfy the Tort Claims Act's requirement that claimed injuries must be proximately caused by the use of tangible personal property. *Id.* at 381.

Dickerson contends that the circumstances here are controlled by *Salcedo v. El Paso Hospital District*, 659 S.W.2d 30 (Tex. 1983). *Salcedo* held that the improper reading and interpreting of results of an electrocardiogram (EKG)

8

constituted a use of tangible personal property and a waiver of governmental immunity. *Id.* at 31.

We reject Dickerson's contention that *Salcedo* controls here. The Tort Claims Act was amended after *Salcedo,* and the decision is now limited to its facts.[2] *See Bossley*, 968 S.W.2d at 342; *Qi*, 402 S.W.3d at 387. Moreover, *Salcedo* is factually distinguishable. Dickerson has not alleged UTHSCH employees improperly read or interpreted the blood culture results. In addition, the *York* court recognized that an EKG machine is tangible personal property. *York*, 871 S.W.2d at 178.

Dickerson also cites two cases relying on *Salcedo* and argues that we are bound to follow them.

The first is *Baston v. City of Port Isabel*, 49 S.W.3d 425 (Tex. App.—Corpus Christi 2001, pet. denied), which also held that sovereign immunity was waived based on the alleged use or misuse of an EKG monitor leading to inappropriate treatment resulting in the patient's death. *Id.* at 429. As in *Salcedo,* the claim in *Baston* alleged misuse of medical equipment. *See Archibeque v. N. Texas State Hosp.—Wichita Falls Campus*, 115 S.W.3d 154, 159, n.6 (Tex. App.—Fort Worth 2003, no pet.).

---

[2] When *Salcedo* was decided in 1983, the Tort Claims Act provided for waiver of sovereign immunity for death or personal injuries caused by "*some* condition or some use of tangible property." (emphasis added). *See* Act of May 28, 1983, 68th Leg., R.S., ch. 530, § 1, 1983 Tex. Gen. Laws 3084, 3085. At that time, the Tort Claims Act also provided, "[t]he provisions of this Act shall be liberally construed to achieve the purposes hereof." *See* Act of May 14, 1969, 61st Leg., R.S., ch. 292, § 13, 1969 Tex. Gen. Laws 874, 877. When the Legislature codified the Tort Claims Act in 1985, the word "some" was deleted. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3303. In addition, the mandate for liberal construction of provisions of the Tort Claims Act was repealed and not carried forward in the codification. *Id.* at 3322.

The second is *The University of Texas Medical Branch at Galveston v. Hardy*, 2 S.W.3d 607 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). In *Hardy*, the patient was connected to a cardiac monitor while recovering from bypass surgery. *Id.* at 608–09. When the monitor sounded an alarm due to a complete heart block and heart stoppage, resuscitation efforts were not commenced for at least five minutes. *Id.* The patient never regained consciousness and was taken off life support. *Id.* at 609.

This court held in *Hardy* that the failure to pay proper attention to the cardiac monitor constituted a use or misuse of tangible property. *Id.* at 610. The cardiac monitor was "put into service" for the purpose of monitoring the patient's heart and the hospital employee's failure to pay attention to the monitor constituted a use or misuse of the monitor. *Id. Hardy* relied on *Salcedo,* which applied a former version of the Tort Claims Act and has been limited to its facts. Moreover, like the EKG monitor, the cardiac monitor is tangible property, the alleged use or misuse of which satisfies the Tort Claim Act's waiver provision.

UTHSCH relies on another case involving an allegation that positive test results were not communicated to the patient in a timely manner, *University of Texas Medical Branch at Galveston v. Mullins,* 57 S.W.3d 653 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In *Mullins,* the plaintiff asked the hospital to perform an HIV test. *Id*. at 655. The test was positive, but the plaintiff alleged she was not informed of the results until three years later. *Id.* The plaintiff alleged that "UTMB staff never followed up on her test results despite statements written in her medical chart." *Id.* at 657. In finding immunity was not waived, this court reasoned that the gravamen of the complaint was that UTMB failed to communicate the test results to her, and information is not tangible property, even if it is transcribed in a medical chart. *Id.*

10

UTHSCH also cites *Brooks v. The University of Texas Medical Branch,* No. 14-10-00988-CV, 2011 WL 3276249 (Tex. App.—Houston [14th Dist.] August 2, 2011, no pet.) (mem. op), which followed *Mullins*. In *Brooks,* a baby's shoulder was dislocated during birth resulting in neurological damage. *Id.* at \*1. While the dislocation appeared on an x-ray, the attending doctor did not inform the mother. *Id.* The plaintiff filed suit alleging that the hospital was negligent in "failing to inform" her of the dislocation, thereby leading to the worsening of the child's condition. *Id.* at \*3. This court held that immunity was not waived for the misuse or non-use of information, reasoning that the plaintiff had not alleged UTMB misused the x-ray machine, but instead, she alleged a failure to communicate the information on the x-ray. *Id.* (citing *York,* 871 S.W.2d at 179).

We follow *York,* as well as our own precedent in *Qi, Mullins,* and *Brooks,* and conclude that the results of the blood culture in this case are intangible information contained in a medical record; this information is not tangible personal property as a matter of law. *See York,* 871 S.W.2d at 179; *Qi,* 402 S.W.3d at 387–88; *Mullins,* 57 S.W.3d at 657; *Brooks,* 2011 WL 3276249, \*3; *see also Gainesville Mem. Hosp. v. Tomlinson*, 48 S.W.3d 511, 512–14 (Tex. App.—Fort Worth 2001, pet. denied) (laboratory results are not tangible property merely because they are recorded on paper).

In determining whether sovereign immunity has been waived, courts look to the real substance of a plaintiff's cause of action, not the plaintiff's characterization of her claims. *Qi,* 402 S.W.3d at 389. Dickerson's allegation that UTHSCH failed to "contact, notify, warn, advise or instruct" her about her daughter's medical condition is an allegation about a failure to communicate information. The substance of Dickerson's claim is that UTHSCH failed to convey information to her. A governmental unit does not waive sovereign immunity by the use, misuse or

11

non-use of information in a medical record. *York,* 871 S.W.2d at 179. Dickerson's suit does not invoke the Tort Claim Act's waiver of immunity under section 101.021(2).

Furthermore, for a waiver under subsection (2) of section 101.021 to apply, the plaintiff's injury "must be proximately caused by the condition or use of tangible property." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). The requirement for causation must be more than mere involvement, and "[p]roperty does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* Instead, the property must be the instrumentality of the harm. *Tex. Tech Univ. Health Sci. Ctr. v. Jackson*, 354 S.W.3d 879, 884 (Tex. App.—El Paso 2011, no pet.). Using the property must have actually caused the injury. *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 588 (Tex. 2001). Dickerson has not alleged that the information was the "instrumentality of the harm." *See Jackson*, 354 S.W.3d 879, 884. Instead, she claims that the cause of death was the delayed treatment of the streptococcus infection. Accordingly, Dickerson failed to allege the required nexus between the use or nonuse of the information and the child's death. *See Qi,* 402 S.W.3d at 388.

Dickerson's list of available communication methods (*i.e.*, telephone, computer, electric typewriter, dictation system, police vehicle) does not transform her allegation into a claim involving a use of tangible personal property.

Whether information exists simply in an oral state or is recorded by or onto tangible property, information itself remains intangible; thus, it cannot provide the basis for a waiver of immunity under the Tort Claims Act regardless of how it was allegedly used or misused by government employees. *See York*, 871 S.W.2d at 179; *see also Axtell v. Univ. of Tex. at Austin*, 69 S.W.3d 261, 266-67 (Tex.

12

App.—Austin 2002, no pet.) (immunity was not waived for claim academic records were improperly faxed to several radio stations because it was the fact that the information was released that allegedly caused the damages, not the means or method by which the information was transmitted). "The medium used to communicate information does not alter its intangible nature." *Sawyer v. Tex. Dep't of Crim. Justice*, 983 S.W.2d 310, 312 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("Information or misinformation remains information whether it is transmitted by electronic equipment or by word of mouth."). The use of computers, telephones, or records to collect and communicate information is not a use of tangible personal property under the Tort Claims Act. *See Cherry v. Tex. Dep't of Crim. Justice*, 978 S.W.2d 240, 243 (Tex. App.—Texarkana 1998, no pet.); *Thomas v. Brown*, 927 S.W.2d 122 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

Dickerson also claims that immunity is waived by UTHSCH's failure to use motor-driven equipment to communicate the test results. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1) (governmental unit may be liable where "death arises from the operation or use of a motor-driven vehicle or motor-driven equipment."). The term "arises from" requires "a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment." *LeLeaux v. Hamshire–Fannett I.S.D.*, 835 S.W.2d 49, 51 (Tex. 1992). This nexus requires "more than mere involvement of property," and is not satisfied by an operation or use of equipment that "does no more than furnish the condition that makes the injury possible." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003). The causation requirement is the same whether a claim is based on use of motor-driven equipment or use of tangible property. *Id.*

13

In this case, the equipment (telephone, computer, electric typewriter, dictation system, police vehicle) is not alleged to have caused the child's death. Instead, Dickerson claims that the cause of death was the delayed treatment of the streptococcus infection. Accordingly, Dickerson failed to allege a nexus between the use or nonuse of the equipment in this case and the child's death. In addition, as we have noted, it is well settled that allegations of nonuse of property are insufficient to fall within the Tort Claims Act's waiver provision. *See City of N. Richland Hills v. Friend,* 370 S.W.3d 369, 372 (Tex. 2012). Dickerson has failed to allege a waiver of immunity under section 101.021(1) based on the failure to use motor-driven equipment to notify her of the blood culture results.

Dickerson additionally asserts that in "certain unique factual circumstances," immunity is waived for claims in which the plaintiff alleges that injury or death was caused by the property's lack of an integral safety component, citing *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, 169, 171 (Tex. 1989); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 300 (Tex. 1976); *Overton Mem'l Hosp. v. McGuire*, 518 S.W.2d 528, 528–29 (Tex. 1975) (per curiam).[3] Dickerson alleges that patient contact was "made an integral safety component" of the blood culture result which UTHSCH's employees voluntarily assumed a duty to provide. The "integral safety component" theory has been limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component, and that

---

[3] Dickerson also cites *University of Texas M.D. Anderson Cancer Center v. King*, 329 S.W.3d 876 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), as an example of the waiver of immunity based on the lack of an integral safety component. In *King,* this court determined that an inadequate time for discovery had elapsed, and we remanded for the plaintiff to amend her pleadings to clarify whether she claimed that her injuries were caused by a hospital bed with inadequate rails or by the hospital personnel's negligence in moving her. *Id.* at 883–85. After remand, we held immunity was not waived because the complaint did not allege the use of tangible personal property, and the hospital exercised medical judgment in raising some, but not all, of the hospital bed's rails. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, —S.W.3d — (Tex. App.—Houston [14th Dist.] June 27, 2013, no pet.).

14

the lack of this integral component led to the plaintiff's injuries. *See Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex. 1992). We have determined that the test results are not property. Therefore, the "integral safety component" theory Dickerson alleges is inapplicable to these facts.

Dickerson asserts that this is not a generic "intangible information" case; instead, she contends that UTHSCH breached an assumed duty to contact the child's mother with the positive test results after the child had been discharged. Dickerson contends cases considering test results to be intangible information rather than tangible property, are distinguishable because UTHSCH assumed a duty to contact the patient in the hospital discharge instructions. Those discharge instructions stated as follows: "If there is . . . a positive culture we will contact you. (Make sure we have your local telephone number)." Dickerson alleges she relied on this promise, no one contacted her, and her daughter died as a result.

The Texas Supreme Court has recognized that a common law duty to use reasonable care may arise when a person undertakes to provide services to another. *See, e.g. Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976). Such a common law duty does not act as a waiver of immunity. The Supreme Court has long recognized that "it is the Legislature's sole province to waive or abrogate sovereign immunity." *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). Legislative waiver of sovereign immunity must be expressed in "clear and unambiguous language." Tex. Gov't Code § 311.034; *York*, 871 S.W.2d at 177. An agent of a governmental unit cannot waive sovereign immunity absent a legislative act. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 858 (Tex. 2002).

While the doctrine of "undertaking" can create a duty under certain

circumstances, a claim against a governmental unit based on a breach of that duty is limited to the causes of action for which immunity is waived as established in the Tort Claims Act. *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394–95 (Tex. 1991); *City of Haltom City v. Aurell*, 380 S.W.3d 839, 854 (Tex. App.—Fort Worth 2012, no pet.) (recognizing that in a premises defect case, a claim against governmental unit for negligent undertaking must comply with the Tort Claims Act). A cause of action alleging a breach of common law duty must nevertheless comply with the Tort Claims Act's requirements for immunity to be waived. Just as the Tort Claims Act does not create new duties, the existence of a common law duty does not waive immunity unless the Tort Claims Act limited waiver applies. *See Sbrusch*, 818 S.W.2d at 394–95. Dickerson's allegations that UTHSCH undertook a legal duty do not waive governmental immunity in this case.

Lastly, we must determine whether to remand the case to give Dickerson an opportunity to replead. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Although a plaintiff sometimes may be afforded an opportunity to amend pleadings, pleadings that affirmatively negate the existence of jurisdiction are incurably defective. *Id.* at 555; *King*, 329 S.W.3d at 881. Dickerson's contention that a legal duty existed does not transform her allegations into a complaint the child's death was caused by the use of tangible personal property or motor-driven equipment. Amendment would not cure Dickerson's failure to plead facts sufficient to waive immunity under the Tort Claims Act.

## CONCLUSION

Dickerson alleges that that UTHSCH failed to convey intangible information to her. Because Dickerson's cause of action alleges a failure to act and the non-use

16

of equipment to convey information, Dickerson's suit does not invoke the Tort Claims Act's waiver of immunity. We sustain UTHSCH's sole issue. We reverse the trial court's order denying UTHSCH's plea to the jurisdiction and render judgment dismissing Dickerson's suit against UTHSCH for lack of jurisdiction.


/s/ William J. Boyce
Justice


Panel consists of Justices Boyce, Christopher, and Brown.